1  PAUL L. HOFFMAN (No. 71244)
   CATHERINE SWEETSER (No. 271142)
2  Schonbrun, DeSimone Seplow Harris & Hoffman
   723 Ocean Front Walk
3  Venice, CA 90291
   Telephone: (310) 396-0731
4  Facsimile: (310) 399-7040
   Email: hoffpaul@aol.com
5

6  DEIRDRE O'CONNOR (No. 169422)
   Law Office of Deirdre O'Connor
7  P.O. Box 1098
   Torrance, CA 90505
8  Telephone: (310) 780-4522
   Email: deirdre@oconnorappeals.com
9

   Attorneys for Plaintiffs
10 Susan Mellen, Julie Carroll, Jessica Curcio,
   and Donald Besch
11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                   **WESTERN DIVISION**

15 SUSAN MELLEN, JULIE CARROLL, )   CASE NO.
16 JESSICA CURCIO AND DONALD    )
   BESCH                        )   COMPLAINT FOR DAMAGES:
17                              )
                 Plaintiffs,    )   (1) DEPRIVATION OF CIVIL
18                              )   RIGHTS, 42 U.S.C., § 1983, *BRADY*
        vs.                     )   VIOLATIONS;
19                              )
   CITY OF LOS ANGELES;         )   (2) JOINT ACTION/CONSPIRACY
20 MARCELLA WINN; RICHARD       )   TO VIOLATE CIVIL RIGHTS, 42
   HOFFMAN; AND DOES 1-10       )   U.S.C., § 1983 *BRADY* VIOLATIONS;
21 INCLUSIVE,                   )
                                )   (3) DEPRIVATION OF CIVIL
22             Defendants.      )   RIGHTS, 42 U.S.C., § 1983,
                                )   DELIBERATE INDIFFERENCE TO
23                              )   CONSTITUTIONAL RIGHT IN
                                )   REFUSAL TO INVESTIGATE
24                              )   EVIDENCE DEMONSTRATING MS.
                                )   MELLEN'S INNOCENCE;
25                              )
                                )   (4) DEPRIVATION OF CIVIL
26                              )   RIGHTS, 42 U.S.C., § 1983, FALSE
                                )   EVIDENCE VIOLATIONS;
27                              )
                                )
28                              )

_____
                 PLAINTIFFS' COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

)  (5) JOINT ACTION/CONSPIRACY
)  TO VIOLATE CIVIL RIGHTS, 42
)  U.S.C., § 1983, FALSE EVIDENCE
)  VIOLATION;
)
)  (6) DEPRIVATION OF CIVIL
)  RIGHTS, 42 U.S.C., § 1983,
)  SUPERVISORIAL LIABILITY;
)
)  (7) DEPRIVATION OF CIVIL
)  RIGHTS, 42 U.S.C., § 1983,
)  VIOLATION OF FOURTEENTH
)  AMENDMENT RIGHTS;
)
)  (8) DEPRIVATION OF CIVIL
)  RIGHTS, 42 U.S.C., § 1983, MONELL
)  VIOLATIONS.

Plaintiffs Susan Mellen, Julie Carroll, Jessica Curcio and Donald Besch allege as follows:

### INTRODUCTION

1.   This case arises from the wrongful imprisonment and victimization of Susan Mellen and her children by Los Angeles Police Department ("LAPD") detective Marcella Winn and other LAPD officers. Mellen and her three children bring this civil action for damages to hold Winn accountable for her violations of their constitutional rights and to obtain compensation for 17 years of their lives lost because of Defendants' actions and omissions.  Others may be responsible for Susan Mellen's wrongful conviction and imprisonment and if discovery reveals such other persons, Plaintiffs will amend their complaint to add them as defendants.

2.   In 1998 Susan Mellen was wrongfully convicted of the July 21, 1997, murder of  Richard Daly based on the false testimony of a single witness, June Patti, a witness Winn knew was unreliable.   As ultimately acknowledged by the court in 2014, Susan Mellen is factually innocent of this crime.  Mellen spent 17 years incarcerated for a crime she did not commit and had absolutely nothing to do with.

3. The architect of this injustice is LAPD detective Winn.  Winn intentionally turned her back on investigating one of the men actually involved in the murder, a gang member with the moniker Payaso, in order to convict Mellen based solely on the word of a manipulative drug addict, June Patti, a witness Winn knew lacked all credibility.  Defendant Winn knew that no jury would have believed Ms. Patti's testimony if the jury knew about even some of the evidence demonstrating Patti's lack of credibility and for that reason suppressed impeaching evidence of Patti so that her testimony would be believed by an unsuspecting jury.

4  Indeed, even Patti's own sister, a Torrance police officer, knew June Patti was a pathological liar and informed Winn of this long before the Mellen trial, and perhaps even before Mellen was arrested.  All of the information Winn and other LAPD detectives possessed showing Patti to be unworthy of belief was suppressed and not provided to Mellen's lawyers in violation of Winn's fundamental constitutional obligations.  Instead of revealing this information, Winn convinced prosecutors to build their entire case against Ms. Mellen on June Patti's false testimony that Susan Mellen had confessed to Patti to playing a role in the murder. She did this even though there was no physical or other evidence connecting Ms. Mellen to this crime whatsoever.

5.  Winn was also wilfully blind to all the evidence, readily available to her as a law enforcement officer, demonstrating that Patti was a pathological liar and a person who repeatedly made false allegations to law enforcement authorities. Had Winn conducted any minimally competent, honest investigation into Patti's background she would have discovered, if she did not in fact know already, that no reasonable detective would rely on Patti's testimony in any criminal case, much less a capital case.

6.  On August 25, 1997, Defendant Winn  arrested Susan Mellen for the Daly murder based entirely on Patti's false statements.   Despite Ms. Mellen's unequivocal and prompt response to Winn's request for a meeting, Winn planned a public "take down" of Ms. Mellen at a McDonald's restaurant in front of Mellen's then 9-year-old daughter Jessica Curcio in order to inflict the maximum humiliation and emotional distress she could on Ms. Mellen and her children. Detective Winn orchestrated  Ms. Mellen's 1998 wrongful conviction for the Daly murder by using the testimony of June Patti, a well-known pathological liar she knew could not be trusted to give truthful testimony.  In doing so, Defendant Winn

and as yet unknown LAPD officers acted with deliberate indifference to Plaintiffs' constitutional rights.   Ms. Mellen was sent to prison for life without the possibility of parole based on the now discredited testimony of this one false witness, who by 1997 already had a long history of providing false testimony to law enforcement officers in Southern California and the State of Washington. There was never any other evidence connecting her to this crime.  For all of this Defendant Winn should be punished with an award of punitive damages commensurate with the outrageous and ongoing violation of Susan's Mellen's life for 17 years.

7.  During her seventeen years' incarceration, Ms. Mellen adamantly maintained her innocence and did all she could to challenge her wrongful conviction. During this time, Winn, and others in the LAPD, continued to suppress evidence that would have enabled Ms. Mellen to win her freedom and failed to provide any such evidence to Ms. Mellen or her lawyers or representatives. Finally, in November 2013 Innocence Matters, a non-profit organization committed to protecting the innocent, investigated Ms. Mellen's case and discovered the perjured testimony and suppression of material evidence that led to this miscarriage of justice.

## JURISDICTION AND VENUE

8.     This action is brought by Plaintiffs pursuant to 42 U.S.C. § 1983 for violations of their constitutional rights arising out of Susan Mellen's wrongful conviction and incarceration for more than 17 years.

9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(4) as this cases arises under the Constitution and laws of the United States.

10.     The acts and omissions complained of occurred within the Central District of California; therefore, venue lies in this District pursuant to 28 U.S.C. § 1391.

**PARTIES**

11.     Plaintiff Susan Mellen is a resident of the County of Los Angeles. She brings this action to obtain compensation for the injuries she suffered because of her 17 years' of wrongful incarceration.

12.  Julie Carroll, Jessica Curcio and Donald Besch are Ms. Mellen's children. Julie was 22 at the time of her mother's arrest in 1997.   Jessica was 9 and Donald was 7 at the time of her arrest.   With rare exception Julie, Jessica and Donald would not see their mother for almost all of her 17 years in prison until her release in October 2014.   They missed out on all of the things that mothers and children enjoy in ordinary life.   Susan Mellen became a disembodied ghost to her children and any contact they had with her a painful reminder of what the family had lost.

13.  Their mother's absence has injured Julie, Jessica and Donald in profound ways and will continue to affect them adversely for the rest of their lives. They bring this action against Winn and other LAPD officers and officials responsible for devastating their lives as a result of their mother's wrongful conviction.   They do so because Winn and others in the LAPD acted with deliberate indifference to their constitutional right to maintain their family and to continue to have their mother available to them and a real part of their lives.

14.     At all times relevant herein, Defendant Marcella Winn was employed by and working on behalf of the Los Angeles Police Department, and resided within the state of California.  In her capacity as a LAPD detective, she was one of the lead detectives in charge of the investigation of the Daly murder.   Defendant

Winn is the detective primarily responsible for orchestrating the wrongful conviction of Susan Mellen by knowingly using the perjured testimony of June Patti to convict Mellen and by suppressing essential information impeaching Patti's credibility and failing to investigate obvious and available information that would have further undermined Patti's credibility beyond question.  She actively suppressed evidence of the involvement of a third party, Payaso, in the Daly murder so that Payaso could be used as a witness in another case.   Defendant Winn is sued in her individual capacity.

15.    At all times relevant herein, Defendant Richard Hoffman was employed by and working on behalf of the LAPD.  Defendant Hoffman was Defendant's Winn's supervisor at the LAPD and in that capacity he actively participated in the investigation resulting in the prosecution and wrongful conviction of Ms. Mellen. On information and belief, Defendant Hoffman was actively involved in the suppression of *Brady* material and in the use of false evidence to convict Susan Mellen.   Defendant Hoffman is sued in his individual capacity.

16.    Defendant City of Los Angeles is a public entity, organized and existing under the laws of the State of California.  The Los Angeles Police Department is an agency of the City of Los Angeles.  The City of Los Angeles is sued because its policies or customs were responsible in whole or in part for the constitutional violations suffered by plaintiffs as alleged herein.

17.    Plaintiffs are informed and believe and thereon alleges that Defendants sued herein Does 1 through 10, inclusive, were employees of the Los Angeles Police Department, and were at all times relevant times acting in the course and scope of their employment and agency.  Each of the Defendants was involved in a conspiracy to wrongfully convict Susan Mellen for the Daly murder.

Each Defendant is the agent of the other.  Plaintiffs allege that each of the Defendants names as a "Doe" was in some manner responsible for the acts and omission alleged herein, and Plaintiffs will seek leave of this Court to amend the Complaint to allege such names and responsibilities when that information is ascertained.  In particular, Plaintiff lacks information on the role of County employees or officers who may have conspired with Defendant Winn to secure Mellen's wrongful conviction.

18.  Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of the other co-defendants.

19.  Each paragraph of this Complaint is expressly incorporated into each cause of action which is a part of this Complaint.

20.  The acts and omission of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiffs.

## FACTUAL ALLEGATIONS

## A.  BACKGROUND

21.  This claim arises from the investigation, prosecution, conviction, and incarceration of Susan Mellen, for a crime that she did not commit.  She was only forty-two years old when she was arrested.  She was the mother of three children, aged 22, 9 and 7, when she was arrested.  Ms. Mellen was in custody for over seventeen years, from her arrest on August 25, 1997, to her release on October 10, 2014.  Ms. Mellen served all of these seventeen years in custody in maximum security prisons and was therefore subject to the severe limitations and indignities

PLAINTIFFS' COMPLAINT

inherent in such settings.  Further, because of her sentence of life without the possibility of parole, Ms. Mellen was subject to even more restrictions and fewer opportunities while in prison.  Ms. Mellen experienced the fear and anxiety of being imprisoned with the State's most serious and violent offenders.  Her conditions of confinement made it impossible to continue normal communications with her children and other family members.  With the exception of one prison visit in 2004 and another in 2005, she had no physical contact with any of her children during the first fourteen years of imprisonment.

22.     Most fundamentally, Mellen lost crucial years away from her normal life and family, in particular, raising her children.   She was prevented from sharing the daily pleasures of everyday life with them and they were denied those pleasures as well.  She attended no children's sporting events or school activities. She could not go to church with her children or assist in their education and religious life.  She could not attend weddings or any other special occasions.  She cried herself to sleep each night begging God to reunite her with her children.

23.     In addition, Ms. Mellen had the most productive years of her life wrongfully taken from her and now finds herself searching for a way to support herself at a time when most members of the community are contemplating retirement.  Because of Defendants' actions and omissions Ms. Mellen has no ability to retire and no recent history of work experience to enable her to perform in a greatly altered work environment.  Indeed, she has had to get used to a world in which knowledge of computers and cell phones, inventions not ubiquitous in 1997, is essential.

24.     Ms. Mellen's resilience and knowledge that she was innocent and her faith in God allowed her to survive while in prison, but the best years of her life

were taken from her based on the unconstitutional acts of officers of the Los Angeles Police Department.

**B.     THE CRIME**

25.     On July 21, 1997, Richard Daly was brutally murdered, without provocation or the chance to defend himself,  in Lawndale by three gang members: Ghost, Wicked and Payaso.   Daly's head was split open with a hammer in an attack reportedly initiated by Ghost.  Wicked and Payaso assisted Ghost in committing the murder.  After killing Daly, the murderers packed Daly's body in the trunk of another gang members' car and brought his body to San Pedro  where they burned the body to avoid detection.   Defendant Winn was assigned to this case from the beginning as the lead detective.

**C.     INVESTIGATION**

26.  In early August 1997 Winn received information from credible informants that the above-mentioned Lawndale 13 gang members, Ghost (Chad Landrum), Wicked (Lester Monllor) and Payaso (Santo Alvarez) were responsible for the Daly murder.   She was also told that the murder had taken place at a Lawndale house on the corner of Firmona and 165th Street owned by the Susan Mellen's mother.   There were two houses at this location, one facing 165th was referred to as the front house and one facing Firmona known as the back house. The two properties were sometimes collectively referred to as the "Mellen Patch." The murder took place in the back house, which in July 1997 was unoccupied. Susan Mellen and her two young children and mother lived in the back house until February 1997.  They were not living at the Mellen Patch at the time of the Daly murder.  The front house was occupied by Susan Mellen's brother Robert, his wife Wende, and their adult children.  Wicked, his mother and sister were also living in

the front house at this time.  Payaso was also known to sleep in the back house when he had no other place to go.

27.   On August 12, 1997, Winn obtained a search warrant to search the two houses.  The search warrants were based explicitly on Winn's opinion, based on credible, independently corroborated evidence that Ghost, Wicked and Payaso were responsible for Daly's murder at that location on July 21, 1997.  The searches occurred early on the morning of August 13, 1997, and turned up nothing whatsoever to tie Susan Mellen to the murders.  Winn conducted extensive interviews of all the occupants at the houses though no record or transcripts of these interviews were ever made.

28.   On the afternoon of August 13, 1997, hours before the time Patti would later claim to have spoken with Susan Mellen, Patti called the police station and asked to speak to Defendant Winn.  Patti had visited the Mellen Patch on several occasions between the time of the murder and August 13 and had met Wicked's mother at the Torrance courthouse on August 14, 1997, where Wicked was being arraigned for the Daly murder.  It is unknown what they spoke about, or what Patti received to testify falsely against Mellen, but Patti's alleged information about the murder was designed to exonerate Wicked and implicate Mellen.

29.   Allegedly, there was a three way telephone conversation between Patti, Winn and Winn's supervisor Defendant Hoffman on the afternoon of August 14, 1997, after Patti allegedly had met with Susan Mellen and heard her confession to the murder.  Defendant Winn took no notes of this critical encounter apart from a cryptic note stating: "Rec'd call from June Patti.  States she works at the Torrance Courthouse as a Paralegal. States that Susie Mellen told her about the murder."  June Patti did not work at the courthouse as a paralegal and was, in fact,

PLAINTIFFS' COMPLAINT

in Los Angeles only for a visit from the State of Washington where she was living. These facts were readily available to Defendant Winn.

30.     The next morning Defendant Winn met with Patti and recorded a short interview in which Patti first made her claim that Mellen sought her out to confess to the murder.  Patti supplied Winn with alleged details about the murder, which were materially different from her later trial testimony and were contradicted by other evidence in the case, but which allegedly convinced Winn that Patti was telling the truth.  No reasonable police detective would have reached that conclusion based on the information Defendant Winn possessed.

31.     Once she heard these details Defendant Winn decided to disregard any evidence which undermined the credibility of her star (and only) witness against Mellen and to avoid conducting any investigation that might lead to evidence casting any doubt on Patti's credibility.  In particular, Winn had a conversation with June Patti's sister, Torrance police officer Laura Patti ("Officer Patti").  Officer Patti informed Winn that her sister June Patti was a pathological liar whose testimony could not be trusted for any purpose.

32.     Though all of the contents of this conversation are not known because Winn intentionally failed to record them in her investigation, it is virtually certain that Officer Patti informed Winn that June Patti had been found incredible by the Torrance Police Department several years previously when she made false accusations against several people.   Officer Patti no doubt informed Winn that June Patti had made recent false allegations and threats against Officer Patti which had led to June Patti pleading guilty to criminal charges on August 13, 1997, in Torrance and to be bound by a restraining order prohibiting her from having any contact with Officer Patti.  She certainly told Defendant Winn that June Patti had

made false accusations against Officer Patti and against many other people and could not be trusted.

33.    Indeed, there was a wealth of impeaching evidence available with minimal effort to Defendant Winn and her LAPD colleagues that would have led any reasonable officer to reject June Patti's testimony in its entirety but Winn intentionally and with reckless disregard for Mellen's constitutional rights conducted her investigation for the purpose of convicting Susan Mellen regardless of any doubts about June Patti's non-existent credibility.

34.    In addition to conducting her investigation with the sole purpose of convicting Susan Mellen by hiding and/or acting with wilful blindness toward any impeaching evidence that might undermine June Patti, Defendant Winn also failed to investigate Payaso's involvement in the murder even though she had credible informants tell her from the beginning that the murder was committed by Ghost, Wicked and Payaso and **not** Susan Mellen.   So sure of these suspects before she spoke with June Patti, Defendant Winn sought and received a search warrant based on sworn statements that she believed that these three gang members, not Mellen, were responsible for the Daly murder.

35.    Defendant Winn and others presently unknown in the LAPD conspired with Los Angeles Sheriff's Department investigators and prosecutors to hide Payaso's involvement in the Daly murder because they were relying on Payaso to testify for the government in another case against John Klene.  Thus, Winn intentionally failed to interview Payaso about the Daly murder even though she had ready access to him.  Defendant Winn took these actions to convict an innocent woman while shielding a gang member actually responsible for the Daly murder from justice.

## D.     SUPERIOR COURT PROCEEDINGS

36.     In presenting the case to the District Attorney, for filing, and at all other times, Defendant Winn did not provide any information about the unreliability of June Patti as a witness to the prosecution or the defense.  Instead, Winn insisted on Patti's credibility and on her certainty that Susan Mellen had committed this crime with Ghost and Wicked.

37.     Ms. Mellen's trial proceeded in May 1998 for the Daly murder.   June Patti was the sole witness against Susan Mellen.  Moreover, Patti's version of Mellen's fabricated confession was even more elaborate and explosive than her initial statements to Defendant Winn in August 1997.  She now testified that Daly had been burned alive and that Ms. Mellen kicked Daly repeatedly for admitting to having had oral sex with Mellen, a claim not previously made by Patti.   Her new testimony was expanded up to convey the maximum impact for the prosecution untethered to any actual facts.  In fact, it was entirely false testimony, as Defendants knew or should have known.

38.     Defendant Winn participated in the criminal proceedings leading up to and including the trial.  Defendant Winn knew that Patti was testifying falsely given the stark contrast between her original statements and her trial testimony and the discrepancies between her testimony and other evidence in the case.  For example, Winn knew the following testimony was false:

a. That tape was used to gag Daly. [No tape was used to gag Daly.]

b. That Daly's mouth was glued shut with Super Glue. [There is no evidence of this and it is contradicted by the physical evidence.]

c.  That Daly was set on fire when he was still alive. [The Coroner found that all burns on Daly were post-mortem.]

PLAINTIFFS' COMPLAINT

d.  That Mellen confessed that Daly was the father of her youngest son then seven. [Mellen met Daly only two years previously and there has never been any controversy relating to the fact that Douglas Besch was Donald's father.]

e.  That Mellen contacted June Patti because she wanted to get access to Officer Patti's expertise. [Officer Patti was estranged from June Patti and had just brought criminal charges against her.]

f.  That Patti was forced to leave Los Angeles because of threats against her. [June Patti was living in the State of Washington as of 1996 and returned to Los Angeles for a visit in the summer of 1997.]

g.  That she and Mellen were friends. [Mellen had not seen June Patti for years and the last time she did Patti had stabbed Douglas Besch, the father of her two youngest children.]

39.  No reasonably competent detective would have allowed Ms. Mellen to be convicted on the testimony of a witness like June Patti, particularly after receiving credible information that a different person was actually involved in the murder.  Defendant Winn knew that June Patti was giving false testimony at trial, yet she said and did nothing to prevent Susan Mellen's wrongful conviction. Instead, at every step Defendant Winn ignored her constitutional responsibilities and trampled on Susan Mellen's right to a fair trial.  Susan Mellen languished in prison and her children lived without their mother for 17 years because of Defendant Winn's actions and omissions.

**E.  THE HABEAS PROCEEDINGS**

40.  On October 10, 2014, Judge Mark Arnold of the Los Angeles County Superior Court reversed Ms. Mellen's conviction, based on Ms. Mellen's petition and the District Attorney's concession that June Patti's testimony was false.  A copy of the transcript of the October 10, 2014, hearing is attached as "Exhibit 1."

All charges against Ms. Mellen were dropped and the District Attorney's office stated its intention not to file any new charges.

41.     In overturning the conviction, the court found that Ms. Mellen's conviction was based, *inter alia*, on materially false evidence and suppression of material evidence favorable of innocence, and that the combination of all errors clearly established a reasonable probability of a different outcome.  On November 21, 2014, Judge Arnold granted Plaintiff Mellen's unopposed motion for a finding of factual innocence.  The court's Order is attached as "Exhibit 2."

42.     The court also found that the additional misconduct from Defendants further prejudiced Ms. Mellen and resulted in her wrongful conviction.  Based on accumulated errors at trial, the Court concluded that Ms. Mellen was denied due process and a fair trial, and that she was innocent. Exhibit "1," at 3.

**E.     MONELL ALLEGATIONS**

43.     The actions and inactions of the LAPD, set forth above, were known, or should have been known, to LAPD policy makers and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline LAPD officers in areas, including the suppression of Brady material and the avoidance of using false testimony to convict criminal defendants, where the need for such training was obvious.

44.     The LAPD's actions and omission as set forth above were a motivating force behind the violations of Plaintiffs' constitutional rights as set forth in this complaint.

45.     In 1989-1990, the Los Angeles County Grand Jury reviewed evidence that the Los Angeles County District Attorney's Office and law enforcement throughout Southern California, including the LAPD, were in the practice of using

PLAINTIFFS' COMPLAINT

informants to obtain false and fabricated confessions of criminal defendants.  The pervasive use of these informants put in doubt many of the convictions obtained by the Los Angeles County District Attorney's Office.  The period of inquiry by the Grand Jury spans from approximately 1979 to 1990, although there are references to convictions as early as 1976.  These practices continued through the time period material to this case.  The use of false informants, presented without adequate vetting or investigation, by the LAPD was a long-standing widely known custom and practice that was a cause of the constitutional rights alleged in this case.

46.     Defendant City of Los Angeles and the LAPD had a duty to create a system in which information pertaining to informants, including information bearing on the credibility of such informants, would be disseminated to deputy district attorneys prosecuting cases in which the informant was to testify.  The City of Los Angeles' failure to do so resulted in the Mellen case prosecutors, and in turn the Mellen defense, having no access to essential impeachment information undermining June Patti's credibility prior to Ms. Mellen's conviction or for years after the conviction as Ms. Mellen attempted to have her wrongful conviction overturned.

47.     Plaintiff is informed and believes that based on the City's failure to create a system in which information pertaining to informants would be shared among personnel, would be able to be accessed by personnel, and would be shared with Deputy District Attorneys prosecuting the case in which the informant was to testify, and the failure to train police personnel to disseminate information pertaining to informants, the City of Los Angeles had a pattern and practice of permitting informants to testify falsely at trial without producing critical exculpatory and impeachment evidence.

48.     Plaintiff is informed and believes that based on the City's failure to create a system in which information pertaining to informants would be provided to Deputy District Attorneys prosecuting the case in which the informant was to testify, and their failure to train and supervise police personnel to disseminate information, including impeachment evidence, pertaining to informants to Deputy District Attorneys prosecuting the case in which the informant was to testify, the City of Los Angeles has a pattern and practice of using unreliable testimony of informants to secure criminal convictions, knowing that such testimony was false, or made in reckless disregard to the falsity of the informant's testimony.  In addition, the LAPD has no system for informing prosecutors or the defense when it subsequently discovers information about the falsity of the evidence used to convict a criminal defendant, thus allowing innocent persons to languish in prison for years or decades.

**F.     PARTICIPATION, STATE OF MIND AND DAMAGES**

49.     All Defendants acted under the color of law.

50.     Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them.  East Defendant ratified, approved and acquiesced in the violations alleged herein.

51.     As joint actors with joint obligations, each defendant was and is responsible for the failures and omission of the other.

52.     Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiffs' rights.

53.     Each Defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from

prosecutors, for an investigation free of active concealment of material facts, and/or for the Plaintiffs' right to due process of law.

54.     As a direct and proximate result of the these acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

55.     Due to the acts of the Defendants, Plaintiffs have suffered, continue to suffer, and are likely to suffer extreme and severe mental anguish, as well as mental and physical pain and injury, in the future.  For such injuries, Plaintiffs will incur significant damages bases on psychological and medical care.

56.     As a further result of the conduct of each of these Defendants, Plaintiffs have lost past and future earnings in an amount to be determined according to proof at trial.

57.     As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including not being able to raise her family and her children have been deprived of their mother.

58.     Defendants' acts and omissions, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiff entitling Plaintiff to exemplary and punitive damages from each defendant other than Defendant City of Los Angeles in an amount to be proven at trial of this matter.

59.     By reason of the above described acts and omission of Defendants, Plaintiff was required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that she might vindicate the loss

and impairment of her rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. § 1988.

**FIRST CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS –**

**42 U.S.C. § 1983 – *BRADY* VIOLATIONS**

**(Plaintff Mellen against Defendants Winn, Hoffman and Does 1-10)**

60.    Plaintiff realleges paragraphs 1-59, as well as any subsequent paragraphs in the Complaint, as if fully set forth herein.

61.    Defendants Winn and Hoffman and Does 1-10, while acting under color of law, deprived Plaintiff of her civil rights, by violating her right to have material exculpatory evidence and information as require by *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* information") turned over to the prosecutors handling the prosecution of Ms. Mellen so that it could in turn be provided to the Mellen defense.

62.    The actions of each defendant in withholding evidence from prosecutors were done with deliberate indifference to or reckless disregard for Plaintiff's rights or for the truth.

63.     The *Brady* violations asserted herein encompass, but are not limited to:

a.  The fact that June Patti's sister informed Defendant Winn that June Patti was a pathological liar and was a completely unreliable witness.

b.  The fact that June Patti lied when she said she was working as a paralegal at the Torrance Courthouse.

c.  The fact that June Patti had been determined to be an unreliable witness by the Torrance Police Department in a series of prior incidents.

d.  The fact that June Patti had a reputation for making false accusations and statements to law enforcement authorities in California and the State of Washington.

e.  The fact that June Patti was estranged from her law enforcement sister and had been prosecuted for making threats against her.

f.  The fact that June Patti had repeatedly changed her story from the first time she met Defendant Winn to her testimony at trial.

64.     The constitutional source of the obligation to provide *Brady* information is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein.  Plaintiff brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of Plaintiff's right to *Brady* information is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

65.     Defendants Winn and Hoffman and the other Doe defendants were each jointly and severally responsible to provide *Brady* information to the prosecutors handling the Mellen case so that it could in turn be provided to the Mellen defense.  Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved, or acquiesced in it.

66.     As a result of the defendants', and each of their, violations of Ms. Mellen's constitutional rights to have *Brady* information turned over to the prosecutors handling his case, Ms. Mellen was damaged as alleged above.

**SECOND CLAIM FOR RELIEF**

**JOINT ACTION/CONSPIRACY TO VIOLATE CIVIL RIGHTS –**

**42. U.S.C. § 1983 –** ***BRADY*** **VIOLATIONS**

**(Plaintiff Mellen against Defendants Winn, Hoffman, and Does 1-10)**

67.    Plaintiff realleges paragraphs 1-66, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

68.    Defendants Winn, Hoffman and Does 1-10 were jointly and severally responsible as investigators assigned to the Mellen case to share material information with each other, and to ensure that *Brady* information was turned over to the prosecutors handling the Mellen case.

69.    Defendants Winn, Hoffman, and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right to have *Brady* information of which they were aware provided to the prosecutors prosecuting the Mellen case, as elaborated above. Each failure to provide *Brady* information, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy.

70.    Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

71.    As a result of defendants', and each of their, violations of Ms. Mellen's constitutional right to have *Brady* information turned over to the prosecutors handling this case, Ms. Mellen was damaged as alleged above.

PLAINTIFFS' COMPLAINT

**THIRD CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 –**

**DELIBERATE INDIFFERENCE TO CONSTITUTIONAL**

**RIGHT IN REFUSAL TO INVESTIGATE OBVIOUS EVIDENCE**

**DEMONSTRATING MS. MELLEN'S INNOCENCE**

**(Plaintiff Mellen against Defendants Winn, Hoffman and Does 1-10)**

72.     Plaintiff realleges paragraphs 1-71, as well as any subsequent paragraphs contained in the Complaint, as if furry set forth herein.

73.     Defendants Winn, Hoffman and Does 1-10, were jointly and severally responsible as investigators assigned to the Mellen case to share material information with each other, and to ensure that witnesses did not give false testimony at Ms. Mellen's trial.   Instead, Defendants suppressed all information that would undermine the credibility of June Patti at trial and intentionally refused to investigate and implicate the gang member Payaso, the person actually involved in the Daly murder, in order to preserve his testimony in another case.  Defendants deliberately turned their backs on the truth in order to convict an innocent person.

74.     Defendants Winn, Hoffman, and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and law of the United States. Each act of improper influence, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy.

75.     Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

76.     As a result of defendants', and each of their, violations of Ms. Mellen's constitutional right not to be convicted based on false evidence, Ms. Mellen was damaged as alleged above.

**FOURTH CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS –**

**42 U.S.C. § 1983 – FALSE EVIDENCE VIOLATIONS**

**(Plaintiff Mellen against Defendants Winn, Hoffman and Does 1-10)**

77.     Plaintiff realleges paragraphs 1-76, as well as any subsequent paragraphs contained in the Complaint, as if furry set forth herein.

78.     Defendants Winn, Hoffman and Does 1-10, while acting under color of law, deprived Plaintiff of her civil rights, more particularly, her right to due process of law, by providing false evidence in reports and statements outside of live testimony, improperly influencing witnesses and fabricating and concealing evidence, that resulted in depriving Ms. Mellen of liberty because they set in motion a reasonable foreseeable chain of events that led to the presentation of false evidence at Plaintiff's 1997 criminal trial, her conviction and incarceration.

79.     Each defendant knew or should have known the evidence was false, and the defendant's conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

80.     In particular, Defendants knew that another person, Payaso, was the most likely other participant in the Daly murder and they suppressed this information and directed their investigation away from Payaso's complicity and at the same time suppressed essential information undermining the credibility of June Patti.  Defendants knew that by orchestrating their investigation in this way they were convicting an innocent person, Susan Mellen, for a murder she had nothing to do with.

81.     Defendants Winn, Hoffman and Does 1-10 knew, or should have known, that evidence used to convict Susan Mellen, was false, and that the witness was providing false evidence.

82.     The constitutional source against using false evidence is primarily the due process clause of the fifth and fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein.  Plaintiff brings this claim as both a procedural and a substantive due process violation.  To the extent that any court were to conclude that the source of Plaintiff's right to eyewitness identifications free from improper suggestion or influence, right to be free from constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

83.     Defendants Winn and Hoffman and the other Doe defendants were each jointly and severally responsible to not use false evidence against Ms. Mellen.  Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

84.     As a result of the defendants', and each of their, violations of Ms. Mellen's constitutional right to not have false evidence turned over to the prosecutors handling this case and ultimately to the defense, Ms. Mellen was damaged as alleged above.

**FIFTH CLAIM FOR RELIEF**

**JOINT ACTION/CONSPIRACY TO VIOLATE CIVIL RIGHTS –**

**42 U.S.C. § 1983 – FALSE EVIDENCE VIOLATION**

**(Plaintiff Mellen against Defendants Winn, Hoffman and Does 1-10)**

85.     Plaintiff realleges paragraphs 1-84, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

86.     Defendants Winn, Hoffman and Does 1-10, were jointly and severally responsible as investigators assigned to the Mellen case to not use false evidence.

87.     Defendants Winn, Hoffman and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right not to have false evidence used in the Mellen case, as elaborated above.  The use of false evidence, as well as other actions related to the use of such evidences, constitutes an overt act in furtherance of said conspiracy.

88.     Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omission of each other.

89.     As a result of defendants', and each of their, violations of Ms. Mellen's constitutional rights to not have false evidence used against her, Ms. Mellen was damaged as alleged above.

**SIXTH CAUSE OF ACTION**

**DEPRIVATION OF CIVIL RIGHTS**

**42 U.S.C.§ 1983, SUPERVISORIAL LIABILITY**

**(Plaintiff Mellen against Defendant Hoffman and Does 1-10)**

90.     Plaintiff realleges paragraphs 1-89, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

91.     During the Course and scope of the Mellen investigation, Defendant Winn was supervised on the Mellen investigation by Defendant Hoffman. Defendant Hoffman was an experienced detective, and was obligated to ensure that Defendant Winn properly performed her duties as an investigator, which would also include ensuring that Ms. Mellen's constitutional rights were protected.

92.     During the entirety of the investigation of this case, Defendant Hoffman, was Defendant Winn's supervisor, partner and trainer.  Upon information and belief, Defendant Hoffman and Doe supervisors within the Los Angeles Police Department who were responsible for monitoring Defendant Winn's performance and conduct as a Detective in this investigation, were on notice of her lack of experience and training as a homicide Detective and failed to take adequate steps to correct it through training or supervision.

93.     Upon information and belief, Defendant Winn received minimal discipline, training, and supervision, which level was grossly insufficient to address the inept, inadequate and deceitful investigation conducted in the Mellen case.

94.     The inept inadequate and deceitful investigation was a highly predictable or plainly obvious consequence of the inadequate training and lack of meaningful control or supervision of Defendant Winn.

95.     Defendant Hoffman and Doe supervisors 6-10, acting within the course and scope of their employment, had a duty to assure the competence of their employee/agents, including Defendant Winn and Does 6-10, but breached their duty and were deliberately indifferent to the constitutional rights of persons in Plaintiffs' position in the performance of their duties by selecting, training, reviewing, supervising, failing to supervise, failing to control, evaluating the competency and retaining Defendant Winn and other employee/agents.  This breach of duty of careful selection, training, review, supervision, periodic evaluation of the competency, and retention of such law enforcement officers and/or employees and/or agents created an unreasonable risk of harm to persons such as Plaintiff.

96.     Defendant Hoffman, and Doe supervisors 6-10 knew or should have known that Defendant Winn was unfit and/or incompetent to investigate the homicide due to her lack of experience unfitness and/or incompetence created a particular risk to others.  The actions and omissions of Defendant Hoffman and Doe supervisors 6-10 in the supervision and training of Defendant Winn was a substantial factor in the harm caused to Plaintiff by Defendant Winn.

97.     Defendant Hoffman, and Doe supervisors 1-10 breached their duty  to observe, report, monitor and control the investigation by Defendant Winn and other employee/agents.

98.     As a direct and legal result of these actions and omissions by Defendant Hoffman, and Doe supervisors 1-10, and each of them, and as a result of their breach of duty to Plaintiff, Plaintiff suffered the damages as alleged herein.

## SEVENTH CAUSE OF ACTION

## DEPRIVATION OF CIVIL RIGHTS

## 42 U.S.C. § 1983, VIOLATION OF FOURTEENTH AMENDMENT RIGHTS

## (Plaintiff Julie Carroll, Jessica Curcio and Donald Besch against Defendants Winn and Hoffman and Does 1-10)

99.   Plaintiff realleges paragraphs 1-98, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

100.    Defendants Winn, Hoffman and Does 1-10, acting under color of state law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right not to have false evidence used in the case against their mother Susan Mellen, as elaborated above, or to suppress crucial *Brady*

PLAINTIFFS' COMPLAINT

evidence demonstrating that the prosecution's only witness against Mellen, June Patti, was unworthy of belief on any issue.

101.  In committing these actions and omissions Defendants acted, at a minimum, with deliberate indifference to the constitutional rights of these Plaintiffs to continue to have a family relationship with their mother.  Indeed, Defendant Winn and others in the LAPD knew that Susan Mellen was the mother of three children and acted with the purpose to harm Susan Mellen and her children in undertaking to frame Susan Mellen for a murder she had nothing to do with while protecting Payaso, a gang member Defendant Winn and others knew to be involved in the Daly murder but chose to shield from justice for their own purposes.

102.  As a direct and legal result of the above-described actions taken by Defendant Winn and other defendants Plaintiffs Julie Carroll, Jessica Curcio and Donald Besch were damaged by losing their parent-child relationship with their mother for more than 17 years.

### EIGHTH CAUSE OF ACTION

### DEPRIVATION OF CIVIL RIGHTS –

### 42 U.S.C. § 1983 – MONELL VIOLATIONS

### (All Plaintiffs against Defendant City of Los Angeles)

103.  Plaintiff realleges paragraphs 1-102, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

104.  Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant City of Los Angeles, and Does 1-10, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engage in the unconstitutional

PLAINTIFFS' COMPLAINT

conduct and omission as set forth in this complaint, which consist of the following customs and/or policies:

     A.     The knowing presentation of false evidence by officers;

     B.     The deliberately indifferent presentation of false evidence by officers;

     C.     The presentation of false evidence by deputies in reckless disregard for the truth or the rights of the accused;

     D.     Officers' failure to provide exculpatory evidence to prosecutors trying the case involving the criminal defendant;

     E.     Failing to adequately train, supervise and control its officers to disclose to the deputy district attorney prosecuting a defendant all exculpatory and impeachment information, including *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady* information, which would include deals informants received for testifying in a case; alternative theories which would support the defense; the disclosure of witnesses who could not identify the defendants; and impeachment information concerning the witnesses;

     F.     Failing to adequately discipline officers involved in dishonesty or otherwise abusing their authority;

     G.     Condoning and encouraging officers in the belief that they can violate the rights of person such as Ms. Mellen with impunity, and that such conduct will not adversely affect their opportunities for promotion and employment benefits; and;

     H.     Condoning and encouraging the fabrication of evidence including but not limited to the filing of materially false police reports, concealing material evidence and improperly influencing witnesses, the use of techniques to influence eyewitness identifications, and/or making false statements to the prosecutor to obtain the filing of false charges and obtaining false convictions.

PLAINTIFFS' COMPLAINT

105.   The actions and inactions of the Los Angeles Police Department set forth in this complaint, were known or should have been known to the policy makers responsible for the LAPD and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and or the substantial likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious**.**

106. Defendant City of Los Angeles' actions as set forth above were a motivating force behind the violations of Plaintiffs' rights as set forth in this Complaint.

107.  As a direct and proximate result of Defendant City of Los Angeles' acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendants Winn and Hoffman and other LAPD officers Plaintiff has yet to identify, Plaintiffs sustained injury and damage.

108. As a result of each of  Defendants violations of Plaintiffs' constitutional rights, as set forth herein, Plaintiffs sustained injury and damage.

WHEREFORE, Plaintiffs request relief as follows, according to proof, against each Defendant:

1. General and compensatory damages in an amount according to proof;

2. Special damages in an amount according to proof;

3. Exemplary and punitive damages against each Defendant, except the City of Los Angeles, in an amount according to proof.

4. Costs of suit, including attorneys' fees, under 28 U.S.C. §1988; and

1        5. Such other and further relief as may be just and proper.

2

3                              Respectfully submitted,

4

5                              SCHONBRUN DESIMONE SEPLOW
                               HARRIS & HOFFMAN, LLP

6
   DATED:       April 22, 2015
7                                      s/Paul L. Hoffman
                         By:    _____
8                                      PAUL L. HOFFMAN
                                       CATHERINE SWEETSER
9

10                             LAW OFFICE OF DEIRDRE O'CONNOR

11
   DATED:       April 22, 2015
12                                     s/Deirdre O'Connor
                         By:    _____
13                                     DEIRDRE O'CONNOR

14

15                             Attorneys for Plaintiffs
                               SUSAN MELLEN, JULIE CARROLL,
16                             JESSICA CURCIO AND DONALD BESCH

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' COMPLAINT

1

**JURY DEMAND**

2

A trial  by jury of all issues triable to a jury is hereby  demanded.

3

4

Respectfully submitted,

5

6

SCHONBRUN, DESIMONE, SEPLOW
         HARRIS & HOFFMAN, LLP

7

DATED:     April 22, 2015

8

By:     s/Paul L. Hoffman
         _____

9

PAUL L. HOFFMAN
CATHERINE SWEETSER

10

LAW OFFICE OF DEIRDRE O'CONNOR

11

12

DATED:     April 22, 2015

13

By:     s/Deirdre O'Connor
         _____

14

DEIRDRE O'CONNOR

15

Attorneys for Plaintiffs
SUSAN MELLEN, JULIE CARROLL,
JESSICA CURCIO AND DONALD BESCH

16

17

18

19

20

21

22

23

24

25

26

27

28

31

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPT. SOUTHWEST "G"         HON. MARK S. ARNOLD, JUDGE


THE PEOPLE OF THE STATE OF CALIFORNIA,   )
                                         )
                          PLAINTIFF,     )
                                         )
                  -VS-                   )     NO. YA033982
                                         )
SUSAN MELLEN,                            )
                                         )
                          DEFENDANT.     )
_____)


TRANSCRIPT OF PROCEEDINGS

FRIDAY OCTOBER 10, 2014



APPEARANCES:

FOR THE PEOPLE:            JACKIE LACEY
                          DISTRICT ATTORNEY
                          BY:  LOREN NAIMAN, DEPUTY

                          _Deirdre_
FOR THE DEFENDANT:        ~~DEIDRE~~ O'CONNOR
                          ATTORNEY AT LAW




                          LUCY I. MILIVOJEVIC, CSR #11496
                          OFFICIAL REPORTER

```
 1    CASE NUMBER:              YA033982

 2    CASE NAME:                PEOPLE VS. MELLEN

 3    TORRANCE, CALIFORNIA      FRIDAY, OCTOBER 10, 2014

 4    DEPT. SOUTHWEST "G" HON. MARK S. ARNOLD

 5    COURT REPORTER:           LUCY I. MILIVOJEVIC, CSR #11496

 6    TIME:                     A.M. SESSION

 7

 8    APPEARANCES:

 9        DEFENDANT SUSAN MELLEN, PRESENT WITH COUNSEL,

10        DEIDRE O'CONNOR, ATTORNEY AT LAW; LOREN NAIMAN,

11        DEPUTY DISTRICT ATTORNEY, REPRESENTING THE

12        PEOPLE OF THE STATE OF CALIFORNIA.

13

14        THE COURT:  ON THE RECORD IN THE WRIT OF HABEAS CORPUS

15    FOR MS. SUSAN MARIE MELLEN, YA033982.  SHE IS REPRESENTED BY

16    MS. O'CONNER.  MR. NAIMAN FOR THE PEOPLE.

17             I'VE READ THE PETITION THAT MS. O'CONNER

18    SUBMITTED AND I UNDERSTAND THAT MS. JENNIFER BERRY,

19    KATHERINE BEKKEN AND YESENIA CARDOZA ASSISTED?

20        MS. O'CONNER:  YES.  AND DAVID WINKER ASSISTED WITH

21    THE INVESTIGATION THAT ALLOWED US TO GET HERE NOW.

22        THE COURT:  ARE THE INTERNS HERE?

23        MS. O'CONNER:  THEY ARE IN THE FRONT ROW.

24        THE COURT:  YOU LADIES?  GOOD JOB.  GOOD JOB ON THE

25    PETITION.

26             DID YOU WISH TO BE HEARD FURTHER BESIDES WHAT

27    YOU PUT IN YOUR MOTION?

28        MS. O'CONNER:  NO, YOUR HONOR.  SUBMIT.
```

1   THE COURT:  MR. NAIMAN, I READ YOUR LETTER THAT YOU

2   FILED TODAY.

3          DO YOU WISH TO BE HEARD FURTHER?

4   MR. NAIMAN:  SUBMIT, YOUR HONOR.

5   THE COURT:  ALL RIGHT.  THE EVIDENCE THAT CONNECTED

6   MS. MELLEN TO THE MURDER OF RICHARD DALY WAS EXCLUSIVELY HER

7   CONFESSION TO A WOMAN NAMED JUNE PATTI.  AS IT TURNED OUT,

8   JUNE PATTI WAS A HABITUAL LIAR.  HER OWN SISTER WHO WAS A

9   TORRANCE POLICE OFFICER, WHO WAS THEN NAMED LAURA MEHEGAN,

10  TOLD THE ORIGINAL INVESTIGATING DETECTIVE THAT JUNE PATTI

11  WAS A LIAR.  HOWEVER, THIS WAS NEVER GOTTEN TO THE ATTENTION

12  OF MS. MELLEN'S ATTORNEY.

13         SINCE THE ONLY EVIDENCE OF MS. MELLEN'S

14  INVOLVEMENT IN THIS CRIME WAS THIS PURPORTED CONFESSION TO

15  JUNE PATTI, A COMPETENT DEFENSE COUNSEL WOULD HAVE CONDUCTED

16  A THOROUGH INVESTIGATION OF HER CREDIBILITY AND

17  TRUSTWORTHINESS OR LACK THEREOF.  THIS WAS NOT DONE IN THIS

18  CASE.  HAD IT BEEN DONE, AND HAD THE EVIDENCE BEEN PRESENTED

19  TO THE JURY ABOUT JUNE PATTI'S LACK OF CREDIBILITY, I

20  BELIEVE THAT THE JURY WOULD NOT HAVE FOUND MS. MELLEN

21  GUILTY.

22         SINCE IT APPEARS THAT MS. MELLEN RECEIVED SUB

23  PAR REPRESENTATION BY HER TRIAL ATTORNEY AND SINCE IT ALSO

24  APPEARS THAT HER CONVICTION WAS BASED ON FALSE TESTIMONY OF

25  JUNE PATTI, THE DEFENSE HAS MET THEIR BURDEN UNDER PENAL

26  CODE SECTION 1473, SUBDIVISION (B), SUBDIVISION (1).  THE

27  PETITION IS GRANTED.  THE JUDGMENT IS VACATED.  THE

28  CONVICTION IS OVERTURNED.  AND AS TO MS. MELLEN, THE CASE IS

1    DISMISSED.

2              IN THIS RARE INSTANCE -- IN THIS RARE INSTANCE

3    OF THE CRIMINAL JUSTICE SYSTEM, IT FAILED.  I BELIEVE NOT

4    ONLY IS MS. MELLEN NOT GUILTY, I BELIEVE BASED ON WHAT I

5    HAVE READ, THAT SHE'S INNOCENT.  FOR THAT REASON I THINK THE

6    CRIMINAL JUSTICE SYSTEM FAILED.  I DO NOT WANT HER SPENDING

7    ANYMORE TIME IN CUSTODY ON THIS CASE.  SHE IS TO BE RELEASED

8    AS SOON AS POSSIBLE, PREFERABLY FROM THIS COURTHOUSE TODAY.

9              DOES ANYBODY HAVE ANYTHING TO ADD?

10         MS. O'CONNER:  NO.  THANK YOU, YOUR HONOR.

11         THE COURT:  ANYTHING?

12         MR. NAIMAN:  NO.

13         THE DEFENDANT:  THANK YOU, YOUR HONOR.  THANK YOU SO

14   MUCH.

15         THE COURT:  GOOD LUCK.  GOOD LUCK TO YOU.

16         THE DEFENDANT:  IT'S A NEW BEGINNING.  IT'S GOING TO

17   BE A GREAT DAY FOR ME AND A NEW LIFE.  THANK YOU SO MUCH.

18   GOD BLESS YOU ALL.

19         THE COURT:  CONGRATULATIONS.

20         MR. NAIMAN:  I WOULD ASK THE COURT TO HAVE A COPY OF

21   THE TRANSCRIPT OF THE PROCEEDINGS TRANSCRIBED AS SOON AS

22   POSSIBLE, SO THEY CAN BE TRANSMITTED TO THE DEPARTMENT OF

23   CORRECTIONS AND WE CAN TRY TO GET MS. MELLEN RELEASED AS

24   SOON AS POSSIBLE.

25         THE COURT:  DO YOU NEED A TRANSCRIPT TO BE FAXED TO

26   THE DEPARTMENT OF CORRECTIONS TO FACILITATE HER RELEASE?

27         MR. NAIMAN:  I DON'T BELIEVE SO, BUT JUST IN CASE, I'M

28   ASKING THE COURT TO ORDER A TRANSCRIPT AS SOON AS POSSIBLE.

1   THE COURT:  DO YOU NEED IT NOW?

2   MR. NAIMAN:  WE'LL PROCEED WITH THE COURT'S ORDER.  I

3 BELIEVE THAT WILL BE SUFFICIENT.  WE'LL DO EVERYTHING IN OUR

4 POWER TO MAKE SURE THAT SHE IS RELEASED FROM CUSTODY IN THE

5 LEAST AMOUNT OF TIME.

6   THE COURT:  MARCIA IS GOING TO GENERATE AN ORDER TO

7 THE DEPARTMENT CORRECTIONS TO HAVE HER RELEASED NOW.

8    FOR WHATEVER REASON IF THAT IS NOT SUFFICIENT

9 AND THEY WANT THE TRANSCRIPT, THEN LUCY WILL PREPARE THE

10 TRANSCRIPTS.

11   MR. NAIMAN:  THANK YOU VERY MUCH, YOUR HONOR.

12   THE COURT:  THAT'S ALL FOR THIS CASE.

13

14   (END OF PROCEEDINGS FOR THIS DATE.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
1                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                       FOR THE COUNTY OF LOS ANGELES

3      DEPT. SOUTHWEST "G"              HON. MARK S. ARNOLD, JUDGE

4

5      THE PEOPLE OF THE STATE OF CALIFORNIA,   )
                                                )
6                                 PLAINTIFF,    )
                                                )
7                      -VS-                     )     NO. YA033982
                                                )
8      SUSAN MELLEN,                            )
                                                )
9                                 DEFENDANT.    )
                                                )
10     _____)

11

12              I, LUCY I. MILIVOJEVIC, CSR #11496, OFFICIAL

13     COURT REPORTER OF THE SUPERIOR COURT OF THE STATE OF

14     CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY

15     THAT THE FOREGOING PAGES 1 THROUGH 4 COMPRISE A FULL, TRUE,

16     AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD ON OCTOBER

17     10, 2014, IN THE ABOVE-ENTITLED CAUSE.

18

19              DATED THIS 10TH DAY OF OCTOBER, 2014.

20

21

22

23

24              LUCY I. MILIVOJEVIC, CSR #11496
                OFFICIAL COURT REPORTER
25

26

27

28
```

# EXHIBIT 2

DEIRDRE O'CONNOR, #169422
INNOCENCE MATTERS
P.O. Box 1098
Torrance, CA 90505
Telephone:  (310) 755-2518
Facsimile:  (310) 755-2581
E-mail: deirdre@innocencematters.org

Attorney for SUSAN MELLEN

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**NOV 21 2014**

Sherri R. Carter, Executive Officer/Clerk
By  **M. Bouchelion**,  Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re<br><br>SUSAN MELLEN,<br><br>    On Habeas Corpus. | Case No. YA033982-02<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINDING OF INNOCENCE BY A PREPONDERANCE OF THE EVIDENCE PURSUANT TO PENAL CODE SECTION 1485.55, SUBDIVISION (b)**<br><br>Honorable Mark Arnold<br>Department:  G<br>[Pursuant to Penal Code 1485.55 to be heard by Judge Arnold.]<br>Hearing Date: To be set by Court |

GOOD CAUSE APPEARING THEREFORE, based on the entire habeas record in this case, the motion for innocence, all exhibits filed with the motion, the argument and evidence presented by counsel, it is hereby ordered, that Susan Mellen's motion for a finding of innocence by a preponderance of the evidence pursuant to Penal Code, Section 1485.55, Subdivision (b), is GRANTED.

IT IS SO ORDERED.

Dated: _____11/21/14_____



_Mark Arnold_
HONORABLE MARK ARNOLD
Los Angeles County Superior Court Judge

1